[No. 2,744.]

# JOHN W. MORRIS v. RENCH ANGLE.

NEW TRIAL STATEMENT TREATED AS SUCH, THOUGH CALLED STATEMENT ON APPEAL.—Where a transcript on appeal showed that a notice of motion for new trial was given and argued in due time, and that the points made on such motion could not properly be considered without a statement on such motion, and that no objection was made on such motion for want of such statement; and the transcript contained a statement manifestly intended as a statement on new trial, but headed "Statement on Appeal": *held*, that such statement should be treated as a statement on motion for new trial.

PRESUMPTION OF REGULARITY OF PROCEEDINGS OF DISTRICT COURT.—It is not to be presumed that a District Court would proceed to hear and determine a motion for new trial on the ground that the evidence was insufficient to justify the findings, without a settled statement as required by law.

APPEAL—MATTERS NOT PART OF JUDGMENT ROLL MUST BE EMBODIED IN STATEMENT OR BILL OF EXCEPTIONS.—Notices of motion to strike out portions of pleadings, or to dismiss action and orders upon such motions, and judgment rolls in other suits introduced as evidence, do not constitute a part of the judgment roll in a case, and hence are not a part of the record on appeal, unless embodied in a statement or bill of exceptions.

TRANSACTION CONSTITUTING ABSOLUTE SALE AND NOT MORTGAGE.— Where Morris and Angle owned a lot of sheep, and Morris executed a bill of sale of his half to Angle, who was in possession, in consideration of the surrender to him of his own note, previously given to Angle, and the giving to him of Angle's note for the balance; and Angle at the same time agreed in writing to sell back to Morris at a future time, on payment of the money represented by the notes: *held*, that the transaction constituted an absolute sale, and not a mortgage.

APPEAL from the District Court of the Seventh Judicial District, County of Mendocino.

This was an action to recover the one half of eighteen hundred and ninety-seven sheep, being a lot of seven hundred and fifty claimed to have been mortgaged by plaintiff to defendant on May 30th, 1866, and their increase up to the commencement of the suit in October, 1869; and in default of such sheep, for the sum of three thousand seven hundred and ninety-four dollars. The contracts and papers passing

between the parties, and the surrounding circumstances, are fully stated in the opinion. There was a judgment in the Court below in favor of plaintiff for the sum of four hundred and eighty-nine dollars and twenty-three cents and one half of eleven hundred and forty-five sheep. Defendant appealed from the judgment and also from an order overruling his motion for a new trial.

The statement contained in the transcript on appeal, though called and headed "Statement on Appeal," showed in terms that it was a statement on motion for new trial. The grounds of alleged error were set forth expressly as those upon which defendant would "rely upon the hearing of said motion for new trial," and the document concluded with the words: "Wherefore, defendant asks for a new trial in this cause."

The statement noticed the fact that certain motions had been made to strike out portions of the complaint and to dismiss the action; that they had been overruled, and that defendant excepted; but it did not embrace the papers used in such motions, or show the grounds or the orders made. These notices and orders, as also the judgment roll in a previous suit between the same parties, were printed in the transcript; but not as a part of the statement or of a bill of exceptions.

The testimony on the part of the plaintiff, contained in the statement, tended to show that defendant often talked with plaintiff about the best way to take care of the sheep; that he once asked plaintiff to find a place to keep them, and said that plaintiff must do his part; that he rented the sheep to one Petty, and said to him, "Keep account of the wool, as I have to settle with Morris;" that he said once to Morris: "Let us go down the country and find a sheep range for our sheep;" that on another occasion he said that he had a mortgage on the sheep from Morris; and at another time he said that Morris would have some sheep if he

paid for or redeemed them. The defendant on his part denied that he had said anything of the kind, or of any such import or meaning.

*Leeman Haile*, for Appellant.

The note of Morris to Angle having been delivered up by the latter to the former at the time the bill of sale of the sheep was made, it is plain that the transaction did not constitute a mortgage to secure that note. There was then no longer a debt or evidence of a debt owing from plaintiff to defendant. A mortgage is a security for the payment of money upon a subsisting debt; there cannot be a mortgage without a debt, for the one wholly depends upon the other. (1 Hillard on Mortgages, 2; *Wright* v. *Ross*, 36 Cal. 441.)

The bill of sale is absolute on its face, and was clearly intended as an absolute sale. The agreement cannot be held to have been intended as a defeasance, or have the effect of rendering the sale a mortgage, for the reasons that it does not purport to be a defeasance, or in any manner refer to the bill of sale; it is not for the same sheep conveyed in the bill of sale, but for sheep of the same quality as those "now owned by the said party of the first part;" it is not for the sheep conveyed in the bill of sale, with their increase for one year, but for the same number, to wit: three hundred and seventy-five, to be delivered one year from date; nor does the price to be paid by the terms of the agreement correspond to the debt upon which the pretended mortgage is alleged to have been given—the price to be paid being six hundred and fifty-six dollars and twenty-five cents, in gold coin, and the pretended debt being four hundred and twenty-six dollars. .

*McGarvey & Carothers*, and *Thomas B. Bond*, for Respondent.

The several motions to strike out and the motion to dis-

miss, the orders made upon them, and the judgment roll in the previous case of *Morris* v. *Angle*, are not properly included in the transcript, for the reason that they are no part of the judgment roll in the case at bar and are not embodied in any statement or bill of exceptions. They should, therefore, be stricken out. (*More* v. *De Valle*, 28 Cal. 174; *Harper* v. *Minor*, 27 Cal. 109.)

There is also no statement on motion for new trial, or anything purporting to be such a statement, in the transcript. There is nothing but a statement on appeal. In the absence of a statement on motion for new trial, the insufficiency of evidence to justify the decision cannot be inquired into, and if it could, the evidence being conflicting, the Court would not disturb the decision. (*Hagar* v. *Lucas*, 29 Cal. 310; *Gayliard* v. *Hoberlin*, 18 Cal. 395.)

There is no finding, it is true, of any indebtedness from Morris to Angle; but there is nothing to show that all the evidence is before the Court, and the presumption is that there was evidence to sustain the judgment. (*Tewksbury* v. *McGraff*, 33 Cal. 237.)

The transaction, though it may be strictly speaking a mortgage, has all the properties of a pledge. Not only is that the effect of the documents taken together, but the testimony shows that the parties had frequent settlements concerning the expenses of taking care of the sheep and the profits from the sale of wool and mutton, and that in said settlements defendant presented accounts against Morris for salt, shearing, herding, and other expenses, subsequent to the execution of the bill of sale, and told Petty to "keep account of the wool, as he had to settle with Morris."

By the Court, SPRAGUE, J.:

The statement found in the transcript with the caption "Statement on Appeal," is manifestly the statement of ap-

pellant on motion for a new trial; the matters therein contained clearly indicate that the same was intended as a statement on motion for a new trial; and further, the transcript discloses that defendant in due time and form gave notice of his intention to move for a new trial, and that the motion was in due time and form made by him, which motion was argued before the Court by the counsel of the respective parties, and no objection appears to have been made by plaintiff to the hearing of such motion for want of a proper statement on which to base the same; and it is not to be presumed that the Court would proceed to hear and determine a motion based upon the ground " that the evidence is insufficient to justify the findings," without a settled statement as required by law.

The appeal is by the defendant from the judgment, and also from the order denying his motion for a new trial.

The notices of motions to strike out and to dismiss, and the orders of the Court upon such motions, also that portion of the transcript denominated the judgment roll in a former suit between these parties, do not legitimately constitute a portion of the record in this case on appeal. They are not embodied in any statement or bill of exceptions, and constitute no part of the judgment roll in this case, hence cannot be regarded on this appeal.

The plaintiff claims, and the Court below so found, that the transactions between the parties of May 30th, 1866, constituted a mortgage by plaintiff to defendant to secure an existing indebtedness of plaintiff to defendant. Defendant insists that the evidence does not sustain this finding, but that such finding is against the evidence. If this point is well taken, there is no necessity for considering other points urged by appellants. The transaction of May 30th, 1866, is evidenced by two separate instruments in writing; and to these instruments, and the surrounding circumstances of the parties thereto, at the time of their execu-

tion, we must look for a true interpretation of what the
parties intended to accomplish by the execution of these
writings. From these writings, and the surrounding cir-
cumstances attending their execution, as disclosed by the
evidence, the parties, in my judgment, most clearly intended
to accomplish an absolute sale of an undivided half of seven
hundred and fifty sheep, by the plaintiff to the defendant,
in consideration of six hundred and fifty-six dollars and
twenty-five cents then paid by defendant to plaintiff, as
follows: Four hundred and twenty-six dollars by the sur-
render of his note for that sum held by defendant, and the
balance, two hundred and thirty dollars and twenty-five
cents, by defendant's note, then executed and delivered to
plaintiff; and further, to arrange the terms for a purchase
of three hundred and seventy-five sheep of a specified
quality, by plaintiff from defendant, to be consummated on
the 1st day of June, 1867. The circumstances attending
the making and execution of these two instruments of
writing on the 30th of May, 1866, most conclusively demon-
strate that the terms of each instrument fully and plainly
express the intention of the parties thereto. These circum-
stances and facts are substantially as follows: Prior to the
30th day of May, 1866, plaintiff and defendant had been
joint owners of seven hundred and fifty sheep, which were
then on defendant's ranch. Plaintiff, on that day, was in-
debted to defendant in the sum of four hundred and twenty-
six dollars, for which defendant held his note, bearing in-
terest at the rate of two per cent per month; and for the
purpose of paying and taking up that note he made an
absolute and unconditional sale of his interest in the herd
of sheep for the sum of six hundred and fifty-six dollars and
twenty-five cents, which he received by taking up his note
to defendant for four hundred and twenty-six dollars thereof,

and taking the promissory note of defendant for the residue. This part of the transaction between the parties is partially evidenced by a bill of sale executed by plaintiff, in the following language:

" For and in consideration of the sum of six hundred and fifty-six dollars and twenty-five cents, I have this day sold to R. Angle all the right, title, and interest that I own and have in and to the certain flock of sheep now in the possession of R. Angle, and which said flock of sheep the said R. Angle and myself have heretofore jointly and equally owned. This sale is made upon the basis of one dollar and seventy-five cents per head. The number sold estimated at three hundred and seventy-five sheep. No allowance made to either party for any actual variation of the estimated number. The receipt of the purchase money, to wit: six hundred and fifty-six dollars and twenty-five cents, is hereby acknowledged.

" Signed,                          JOHN W. MORRIS."

Upon the execution of this bill of sale by plaintiff, the defendant delivered to him the promissory note of four hundred and twenty-six dollars, heretofore referred to, and made and delivered to plaintiff his (defendant's) promissory note for the residue of the purchase price of said sheep; and thereupon, on the same 30th day of May, 1866, plaintiff and defendant made and executed in writing and in duplicate an agreement in language as follows:

" This article of agreement, entered into this 30th day of May, A. D. 1866, between R. Angle, party of the first part, and John W. Morris, party of the second part, witnesseth: That the said party of the first part, for and in consideration of the promises and undertakings of the said party of the second part hereinafter set forth, doth agree with the said party of the second part to deliver to the said party of the

second part, on the 1st day of June, A. D. 1867, at Walker Valley, in the County of Mendocino, three hundred and seventy-five sheep, of the same quality as those now owned by the said party of the first part. And the said party of the second part doth agree with the said party of the first part, that he, the said party of the second part, will, at the time and place aforementioned, to wit: on the 1st day of June, A. D. 1867, and at Walker Valley, in Mendocino County, pay to the said party of the first part the sum of six hundred and fifty-six dollars and twenty-five cents, in gold coin of the United States of America.

"In witness whereof we have hereunto set our hands, this 30th day of May, 1866. [Signed.] R. ANGLE, JOHN W. MORRIS."

Such are the writings and attendant circumstances evidencing the character of the transactions between plaintiff and defendant, on the 30th May, 1866, in reference to plaintiff's undivided half interest in the flock of seven hundred and fifty sheep. The fact that the defendant surrendered to plaintiff, on the receipt of the above bill of sale, the only evidence of indebtedness he then held against plaintiff, and at the same time executed and delivered to plaintiff his own promissory note for the residue of the purchase price of the sheep as named in the bill of sale, and did not retain or hold any evidence of an indebtedness on the part of plaintiff to him, most strongly and conclusively tends to show the intention of the parties was to absolutely and unconditionally transfer the title and property of plaintiff in the sheep to defendant. The subsequent agreement, in writing, above set forth, given in evidence on the trial by plaintiff, did not in the slightest degree tend to indicate any other or different intention in the transaction evidenced by the bill of sale than such as is indicated by its terms; and subsequent expressions of defendant, given in evidence on

the trial by plaintiff, even if perfectly understood and related by the witness, were entirely inadequate to change or modify the terms or effect of a deliberate agreement previously made, or to convert what, at the time, was intended to be an absolute sale, into a mortgage. Had all the seven hundred and fifty sheep died upon the hands of defendant before the 1st day of June, 1867, the entire loss manifestly would have fallen on him; and had the market value of sheep, of a like quality, advanced to two dollars and fifty cents per head by the 1st day of June, 1867, the plaintiff could rightfully have insisted upon the delivery to him, by defendant, of the three hundred and seventy-five sheep on tender of six hundred and fifty-six dollars and twenty-five cents, or damages for a failure so to do. The total loss of all his sheep, by defendant, would not have discharged him from the obligation under his agreement of May 30th, 1866; nor would the plaintiff have been relieved from his obligation to pay defendant six hundred and fifty-six dollars and twenty-five cents, in gold coin, on the 1st of June, 1867, for three hundred and seventy-five sheep, of the specified quality, had the market value of sheep of like quality at that time fallen to one dollar per head.

With these views, it becomes unnecessary to notice other questions discussed by counsel.

The judgment and order denying defendant's motion for a new trial should be reversed, and cause remanded for further proceedings. So ordered.