[Civ. No. 1526.   Fourth Appellate District.—February 5, 1935.]

GEORGE R. SHUEY, Appellant, v. IVAN W. BUNNEY et al., Defendants; U. G. CLARK, Respondent.

John F. Kunz for Appellant.

Randall & Bartlett, George Francis and Kenneth W. Kearney for Respondent.

BARNARD, P. J.—On July 1, 1925, the plaintiff as first party entered into a contract with the defendants Bunney

as second parties whereby the latter were to care for and handle certain cattle to be turned over to them by the first party. It was agreed that the second parties were to take charge of 429 head of cattle then owned by the first party, of 275 more if the first party should purchase and deliver the same, and of any additional number which might be turned over to them by the first party, together with any increase from all of said cattle. The first party was to loan to the second parties a sufficient sum of money to fence their ''claim'', to purchase two windmills, and to pay the cost of extending a certain tunnel for water purposes. It was further agreed that the second parties were to care for the cattle on their range, situated partly in California and partly in Nevada, and that they might sell certain of the stock as time went on, provided the number in the herd should at no time be reduced below 424; that all stock so disposed of should be sold in the name of the first party and all checks made payable to him; that the first party might retain from such proceeds a sufficient sum to cover all money advanced by him with interest, all taxes paid by him, and interest at six per cent on the value of all cattle furnished by him at an agreed price per head; and that the second parties should pay the first party $30 per head for any cattle not returned to him at the end of five years.

On May 7, 1928, these parties entered into a supplemental agreement which recited that whereas the first party had furnished labor, material and money for the improvement and equipment of the ranch and range controlled by the second parties and for the purchase of cattle which had been added to the number theretofore delivered to the second parties under the terms of this agreement, and in consideration of the foregoing and for the purpose of repaying the first party at the expiration of the agreement, the second parties agreed to add 100 head of cattle to the number covered by the agreement, making a total number of 825 head then owned by the first party and held by the second parties under the agreement. It was then provided that in the event the second parties exercised their option to purchase the cattle the price should be changed to $33 a head.

The original agreement provided that the second parties were to furnish to the first party a bond in the sum of

$5,000 conditioned upon their faithful performance of the terms of the agreement. Pursuant thereto a bond was furnished in that amount, and thus conditioned, signed by the second parties to the contract and by the defendant Clark as surety.

After the expiration of the five-year period provided in the contract, this action was brought. The complaint set forth copies of the contracts and bond above referred to and alleged that pursuant to the agreement the plaintiff had delivered to the defendants Bunney 823 head of cattle; that these defendants had not sold any cattle in the name of the plaintiff or accounted to him for any except that there had been surrendered to him 364 head; and that these defendants had not purchased any of the cattle or made any settlement for the remaining 459 head, but on the contrary had refused to pay for the same. Judgment was prayed for against the defendants Bunney for the value of the 459 head of cattle at $30 each, and against the defendant Clark, upon the bond, in the amount of $5,000.

The defendant Clark filed an answer containing various denials together with certain affirmative defenses in which it was set up that the original agreement had been so altered by the parties thereto as to release him from liability on the bond. In addition, he filed a cross-complaint seeking to recover judgment against the plaintiff on a $500 note executed by the plaintiff and on an unpaid portion of a judgment against the plaintiff rendered in a court in Nevada.

The defendants Bunney did not appear and the plaintiff failed to answer the cross-complaint above referred to. When the matter came on for hearing the plaintiff moved to strike out the cross-complaint which motion was denied. The defendant Clark moved for judgment on the pleadings as to the plaintiff's cause of action on the ground that the complaint did not state facts sufficient to constitute a cause of action against him, which motion was granted. The court then heard evidence in support of the cross-complaint, and entered judgment to the effect that the plaintiff take nothing against the defendant Clark and that Clark recover from the plaintiff the amount sought in the cross-complaint. From this judgment the plaintiff has appealed upon the judgment roll and a bill of exceptions.

■ The first point raised is that the court erred in denying the appellant's motion to strike from the files the cross-complaint filed by the respondent Clark. Nothing is set forth in the bill of exceptions concerning this matter except the statement that the court erred in this respect. So far as this point is concerned, then, the appeal rests entirely upon what appears in the judgment roll. The judgment roll, as such, is not set forth in the transcript which, however, contains copies of various papers filed in the clerk's office some of which are properly a part of the judgment roll and some not. Among the latter is a copy of the motion to strike the cross-complaint from the files and a copy of the minute order denying such motion. These papers are not a part of the judgment roll (sec. 670, Code Civ. Proc.).

■ Matters which are not a part of the judgment roll cannot be considered on appeal unless they are otherwise made a part of the record (*Stoltenberg* v. *Harveston,* 219 Cal. 406 [26 Pac. (2d) 833]). All presumptions are in favor of the judgment and the evidence, which is not before us, may have disclosed that the matters upon which the cross-complaint was based related to the transaction and property involved in the complaint. Since the bill of exceptions, as settled, contains nothing to support the point raised the matter cannot be here considered.

■ The second point raised is that the court erred in entering a judgment on the pleadings with respect to the original complaint. In support of this contention it is argued that the original contract provided that the second parties therein should take charge of the 424 head of cattle then owned by the first party, of 275 more which the first party expected to procure and turn over to the second parties, and of any additional number which might be furnished by the first party to the second parties. It is then argued that the supplemental agreement made no material change in this arrangement but that the same amounts to a mere statement that 825 head of cattle had been furnished by the first party up to that time.

The original contract provided only that the second parties were to take charge of such stock as was furnished by the first party; that the first party was to advance to the second parties money for a few named things only; and that at the expiration of the period the second parties

might retain the stock by paying for the same at $30 a head. From the supplemental contract it appears that the second parties agreed to and did furnish 100 head of stock which was not provided for in the original contract, and that this was done by way of repaying the first party for advancements made by him in addition to those required of him by the first contract. The supplemental contract further increased the price per head at which it was agreed that the second parties would account to the first party for any cattle not returned to him at the expiration of the period named.

It thus appears that in this action the appellant is attempting to hold the surety on the bond not only for a failure, on the part of his principals, to account for what was furnished under the terms of the agreement, but also for what had been furnished in addition to and beyond the terms of the original contract. Incidentally, it is sought to hold the surety for moneys advanced by the appellant in addition to the sums he was required to advance under the terms of the agreement.

The supplemental agreement changed the price of the cattle in the event the second parties desired to exercise their option to purchase the cattle. While the appellant argues that this change in price was of no effect since the complaint sought to recover the value of the cattle at the price named in the original agreement, the fact remains that it was a change in the contract and we think such a change as comes within the provisions of the code sections by which a surety is released (Civ. Code, secs. 2819 and 2840). This change was both important and material, as under the changed price it would have taken $2,475 more for the second parties to have purchased the cattle referred to in the supplemental contract. A further consideration is that the supplemental contract, by adding 100 head of cattle which were neither authorized nor contemplated by the original agreement, added another $3,300 to the obligations of the second parties. These facts alone may account for the failure of the second parties to either exercise their option or pay for the cattle, and it cannot be said that the changes made did not affect the rights of the surety on the bond.

The motion for judgment on the pleadings was properly granted since it sufficiently appears therefrom that the appellant could not recover on the complaint filed.

The judgment is affirmed.

Marks, J., and Jennings, J., concurred.